## IN RE ESTATE OF JESSE PALMER.

**WILLS:** Rights of Legatees—Interest on "Advancement." A testa-
mentary requirement that promissory "notes" which testator may
hold against a legatee shall be charged against said legatee's share,
reinforced by a provision in the interest-bearing notes themselves
to the effect that said "notes" shall be paid out of said legatee's
share, requires the accumulated *interest* on the notes, as well as the
principal, to be charged against the share of said legatee, even
though the will makes frequent reference to said "notes" as
*advancements.*

**DESCENT AND DISTRIBUTION:** Advancements—Applicability of
Statute. Principle reaffirmed that the statute with reference to
advancements (Sec. 3383, Code, 1897) does not apply to testamentary
dispositions of property.

**WILLS:** Rights of Devisees—Partial Ademption—Barred Claims.
Under a testamentary direction to deduct from a legacy the amount
of a note held by the testator against the legatee, it is quite imma-
terial that an action on said note would be barred by the statute
of limitation.

*Appeal from Monroe District Court.*—FRANCIS M. HUNTER,
Judge.

OCTOBER 17, 1922.

APPEAL from an order of a probate court, whereby objec-

tions to a final report were overruled and the final report approved. The objectors appeal.—*Affirmed.*

*John F. Abegglen* and *T. W. Cole,* for appellants.

*D. W. Bates,* for appellee.

EVANS, J.—This appeal involves a question of the construction of the will of Jesse Palmer, deceased. The decedent, Palmer, died testate, in December, 1910, leaving surviving him his wife and five children. The will was exe-

1. WILLS: rights of legatees: interest on "advancement."

cuted in October, 1904. It gave a life estate in all the testator's property to the surviving widow. It provided, also, as follows:

"At her [Ellen S. Palmer's] death I will devise and bequeath all of my said estate to my five now living children or their heirs, if they be dead, but I direct that all my real estate then remaining be sold and converted into money and the proceeds thereof divided equally among my said five children or their heirs but in making such division I will and direct that there be taken into account, the advancements I have made to any of my said children as shown by any promissory note, I hold against any of my said children, whether said promissory note express the intention to treat the same as advancements or not. In case my said wife does not survive me, then I direct that my entire estate be divided equally among my children after converting the same into money, and taking into account said advancements and that I hereby will and devise it to them and their heirs on said terms and conditions."

In 1894, the decedent had paid a debt for his daughter, Hannah Hammond, and had taken her promissory note for the amount thus expended in her behalf. Such note was as follows:

"One year after date for value received I promise to pay J. Palmer or order the sum of twenty-six hundred and twenty-one dollars and sixty-four cents; inst. at the rate of six per cent per annum until paid $2,621.64, this note to be paid out of my share of my father's estate if not sooner paid, June 16, 1894. Hannah Hammond."

In computing the amount of the estate, the executor in-

cluded this note, with interest thereon, amounting to a sum total of about \$6,500, as a part of such estate, and charged this amount against the share of Hannah. Hannah having died before the settlement of the estate, and before the death of the life tenant, her surviving husband and daughter and a granddaughter appeared, as her personal representatives, and filed the objections to the final report. The executor found the sum total to be divided at approximately \$28,000, and that such sum was to be divided between *four* heirs only, because the fifth heir had received from the decedent, in his lifetime, advancements in excess of his share. The executor charged the sum of \$6,500 against the share of Hannah, which would otherwise amount to \$7,068.82. The amount thus charged included interest to the amount of \$3,878.55. This is the bone of controversy. The contention of objectors is that the amount of the promissory note should be deemed an advancement, and that it should, therefore, be deemed not to draw interest. This contention was denied by the trial court. The question thus presented is not free from difficulty. It involves a construction of the statute, of the note, and of the will.

I. Section 3383 of the Code is as follows:

"Property given by an intestate by way of advancement to an heir, for the purposes of the division and distribution thereof shall be considered part of the estate, and be taken by him toward his share of the estate at what it would be worth if in the condition in which it was given to him, but if such advancement exceeds the amount to which he would be entitled, he cannot be required to refund any portion thereof."

It is not claimed that this section controls the provisions of the will. Of course, it does not. It does not, by its terms, purport to be applicable to testamentary disposition of property.

2. DESCENT AND DISTRIBUTION: advancements: applicability of statute.

In the application of this statute, it has always been held that a voluntary conveyance or a gift by a parent to a child should be deemed presumptively an advancement, to be ultimately charged against the share of the child in the distribution of the parent's estate, in the event that he died intestate. The statute, when applicable, does not put the parent under disability to make absolute donation to his child; nor does it put the child

under disability to become bound as a debtor to the parent, by a promissory note or otherwise. In the event of a donation, the statute simply puts upon the child the future burden of showing that it was not intended as an advancement. If a debt be created, and a promissory note be given, then again is the burden upon the child, as maker, to show that only advancement was intended. Where property is disposed of by will, the statute is not applicable thereto. The language of the will controls the disposition of the estate. Whether, in such a case, the amount of advancement is to be charged against a share does not depend upon any presumption of the statute, but upon the language of the will. It rests wholly with the testator, in the making of his will, to say whether or not, and to what extent, advancements shall be charged.

By the execution of the promissory note, Hannah became presumptively indebted to her father, according to the terms thereof.

It is the argument for the objectors that the provision above quoted from the will indicates the purpose of the testator to convert the promissory notes of his children into mere advancements; and if it is an advancement, then the presumption is invoked that, as such, it should be deemed to have drawn no interest. The quoted provision does not, in terms, so provide. The reliance of the objectors is put upon the use by the testator of the word "advancements." This is all there is which tends to support their objections. It is to be conceded that the use of this word by the testator had some tendency to show the mental attitude of the testator toward the indebtedness owed to him by some of his children. It appears from the record that he held the promissory notes of at least three of them. His reference to these notes as "advancements" does tend to create an impression upon the mind that he may have intended ultimately to treat them as "advancements," within the meaning of Code Section 3383. But this circumstance is not sufficient, of itself, to justify a finding to that effect. Independent of Code Section 3383, the word "advancements" has a quite broad and general meaning, and may properly be used to include money loaned for a specific purpose on the part of the borrower. The language of Section 3383 has no application, as such, to the estate of a

testate decedent. It is, therefore, not controlling, although it may properly be considered in arriving at the meaning of the terms of the will. If there were other evidence tending to support the contention, the circumstance under consideration might be a very important aid thereto. But the terms of the will as a whole are adverse to the objectors. If the will had referred to the notes as "advancements" for the purpose of forgiving them, the forgiving would have extended to both principal and interest. But the reference thereto in the will was not for the purpose of forgiveness, but for the purpose of enforcement. The advancements, both in the form of promissory notes and otherwise, were to be charged against the share of the borrowing heir. Inasmuch as the notes were presumptively evidence of indebtedness, and bore interest in express terms, the charging of the *notes* against a share would be to charge both principal and interest. The effect of this provision was to charge these notes against the share, even though they were barred by the statute of limitations. It must be presumed that that was one purpose in the provision of the will. The note of Hannah lacked but a few months of the bar of the statute, at the time the decedent executed his will. This construction of the will is consistent with the terms of the note. These terms are adverse to the position of the objectors. It was provided in the note that, unless sooner paid, it should be paid out of the prospective share of the maker in the estate of her father, the payee. This provision would have rendered the "note" payable out of her share, if no will had been made; and it would have been so payable even though otherwise barred by the statute of limitations. If the "note" by its terms were chargeable against the share of the estate, this would necessarily include the interest accrued, as well as the principal.

3. WILLS: rights of devisees: partial ademption: barred claims.

Inasmuch, therefore, as the terms of the note and likewise those of the will are adverse to the objectors, except as to the use of the word "advancements," and inasmuch as Code Section 3383 and its presumptions have no controlling application to the case, we would not be justified in finding that the objectors have overcome the presumptions obtaining against them. Much

less would we be justified in reversing the contrary finding by the probate court.

The computation adopted as against the objectors was the same as that adopted against the other heirs, who have acquiesced therein. We reach the conclusion that the order of the district court should be affirmed.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.