IN RE ESTATE OF P. W. FRANCIS.

H. R. FRANCIS, Appellee, v. HERSHEY STATE BANK, Executor, et al., Appellants.

WILLS: Rights of Legatees—Advancement (?) or Gift (?)   The cancellation by a testator, after making his will, of notes held by him against a legatee, and the surrender of said notes to the legatee (after carefully computing the amount due thereon), are not sufficient to overcome the presumption of an *advancement*, in view of the declaration in the will (1) that testator intended an equal division between his legatees, and (2) that all *loans* to legatees, as shown by testator's account book (made part of the will) should be deemed

part of his estate, and in view of the fact that said account book listed the notes in question as *loans*, and not as *gifts*.

DE GRAFF, VERMILION, and ALBERT, JJ., dissent, holding that the record revealed a consummated gift.

Headnote 1: 18 C. J. p. 933; 40 Cyc. p. 1923.

*Appeal from Muscatine District Court.*—D. V. JACKSON, Judge.

FEBRUARY 15, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Application in probate for an order that certain promissory notes listed in the inventory of the executor were, in fact, a gift to the applicant, and not assets of said estate. A resistance was filed to the application by a legatee. The relief sought was granted.—*Reversed.*

*Hoffman & Hoffman* and *Matthew Westrate*, for appellants.

*J. F. Devitt*, for appellee.

FAVILLE, J.—On November 30, 1920, the testator executed his last will and testament. He died August 16, 1924. He left surviving him three adult children, a daughter and two sons. One of said sons is the appellant, and the other the appellee in this action. The testator left a will, Item 1 of which provides for the payment of debts. Item 2 is as follows:

"I have made, at various times, gifts to my three children, Edgar Francis, Harold Francis, and Edna Kern, and in making the same I have given my daughter approximately five thousand ($5,000) dollars more than I have given my sons, and it was my desire and intention at the time I made said gifts to so favor her because she was a daughter and not a son and not so well able to earn for herself, and I hereby expressly confirm all of such gifts and refer to and make a part of this will my account book showing the several accounts with my said children, and showing the gifts so made. If the said book shows that any of the amounts given to my said children were really made as loans and not as gifts it is my desire that the amounts advanced as loans be con-

sidered as a part of my estate and be set apart to such of my children as such loans have been made to as a part of their share of my estate."

Item 3 divides the residue of the estate equally among the three children of the testator. The executor listed in the inventory of the personal property belonging to said estate a certain note given by the appellee in the principal sum of $4,913.61, dated November 11, 1921, due on demand, and a second note of $503.15, dated April 3, 1922, payable on demand. Both notes bear interest at the rate of 6 per cent per annum.

It is the contention of the appellee that said notes were canceled and delivered to the appellee by the testator on or about the 24th day of December, 1923, and constituted a completed gift between said parties, and that the same should not be listed as assets of said estate. The contention of the appellant is that the cancellation and delivery of said notes to the appellee was in the nature of an advancement, and not a gift, and that appellee should be charged with the same. The record discloses that, prior to October 24, 1921, the appellee had obtained various sums of money from his father, for which he had given his notes, four in number. Two of said notes were executed prior to the date of the will, and two subsequent thereto. On October 24, 1921, appellee obtained a further sum of $503.15. The total of said notes and cash, together with the accrued interest, at that time amounted to $4,913.61, for which a new note was given by appellee to the testator. The note of $503.15, dated April 3, 1922, was for money sent at the time by telegraph to the appellee by his father, including the cost of transmission. The appellee lived in California. In December of 1923, the testator was in poor health, and appears not to have been actively engaged in business. The appellee visited his father at that time, and on the 23d day of December, 1923, the testator instructed an employee of the bank of which he was president to bring appellee's notes to the testator's house and to compute the interest on them. This was done. The notes had been kept in a box in the bank where the testator kept his valuable papers. The interest on each note was computed by the employee, and a slip of paper showing the same was attached to each note. The following day, the testator again called the employee to his home, and directed him to take the notes back to the bank and run them through the canceling

machine and return them to him. This was done. When the
employee returned to the home of the testator with the canceled
notes, the appellee was at the house. The employee handed the
notes to the testator, who handed them to the appellee. The
employee is unable to testify as to the exact conversation, but
testifies that the testator made a remark to the appellee to the
effect that "I believe these are what you are looking for, Har-
old." The widow of the testator testified that she was present at
the house at the time referred to, and that the testator said to
her, as she was passing through the room, "Mother, what shall
we do with this boy's notes?" and that she replied, "Do as you
please; if you would like to * * *" The notes bore the cancella-
tion stamp by perforation, "Paid 12-24-23." The appellee pro-
duced said notes upon the trial.

The testator kept an account book, which was produced, and
on a certain page thereof appeared the heading, "Bills Receiv-
able." Under said heading are listed various notes, beginning
with the date April 16, 1919, and extending to April 3, 1922.
The four notes which were merged in the note of $4,913.61 are
listed in said book under said heading, with date, amount, and
appellee's name, and opposite each is a memorandum, dated
November 11, 1921, and indicating that said note was renewed
on said date. The note of November 11, 1921, of $4,913.61, is
listed in the same way, as is also the note of April 3, 1922. There
are no recitals in said book respecting said last two notes, except
the listing and description of the same.

In the spring of 1924, the testator personally prepared and
filed with the United States government his income tax return.
Under the heading in said report, "Deductions," appears the
item: "Bad debts. Worthless note, $6,000." Said item referred
to the two notes in controversy. It also appears that, after the
death of the testator, an investigation of said matter was made
by the United States government, and the said item of deduction
was disallowed.

The question arises whether, under all of the facts shown,
the cancellation and delivery of the notes to the appellee consti-
tuted a gift. The evident intent of the testator, as expressed in
his will, was to make an equal division of all of his property
among his three children, except a specific bequest of $5,000
additional to his daughter. He recites in Item 2 that he has at

various times made gifts to his children, and that he refers to and makes a part of his will his account book, showing several accounts with his said children, and showing gifts so made. There is nothing in the record to indicate that the said book contained any record of gifts to his children, describing the same as such. The will further provides:

"If the said book shows that any of the amounts given to my said children were really made as loans and not as gifts, it is my desire that the amounts advanced as loans be considered as part of my estate and be set apart to such of my children as such loans have been made to as a part of their share in my estate."

The book shows the two notes in suit to be listed as bills receivable, along with other notes, all of which are designated as bills receivable in said book, and clearly appear in said book as loans. There is no entry of any kind or character in said book indicating in any way that the two notes in question were described by the testator as being any other than loans. According to the express recitals of the will and of the book therein referred to, the two notes in question, upon that record, would obviously be regarded as loans. If we had nothing in the case except the terms of the will and the recitals of the book conforming therewith, the conclusion would be inevitable that the two notes in controversy were loans, and should be charged against the share of the appellee, as provided in the will. This would have been the situation and the result, had the testator died prior to December 24, 1923. We therefore are called upon to determine the effect of the transaction of December 24, 1923, at which time the testator secured the notes, caused the interest to said date to be computed thereon, and, having ascertained the entire amount that was due on said notes, caused the same to be marked as paid, and then delivered them to the appellee. The testator did not make any entry in his book signifying that the two notes which had been listed in the book were to be treated as gifts, or that they had been canceled. Did this transaction of December 24, 1923, constitute in law a gift to appellee, notwithstanding the terms of the will?

It is a well-established rule in this state that property given by an intestate to an heir will be presumed to be an advancement, instead of a gift, and that the burden rests upon the heir to establish that it was a gift, instead of an advancement. Such

is the rule recognized by our statute as to estates of intestates. Section 12029, Code of 1924; *Calhoun v. Taylor*, 178 Iowa 56; *Bash v. Bash*, 182 Iowa 55. The statute does not apply to wills. The language of the will controls, in determining the disposition of the estate. *In re Estate of Palmer*, 194 Iowa 611; *In re Estate of Mikkelsen*, 202 Iowa 842; *In re Estate of Hall*, 132 Iowa 664. In the instant case, the obvious intention of the testator, as clearly expressed in the will, was to distribute his property equally among his three children, except as to the daughter, to whom, for reasons stated in the will, he gave an additional $5,000. He expressly provided that the amounts shown in his account book as loans should be treated as such, and not as gifts, unless the contrary appeared on the book. The trial court held, and we think correctly, that the burden rested upon the appellee to establish that the surrender of the notes was a gift, and not in the nature of an advancement. In *Davis v. Close*, 104 Iowa 261, we considered a will which provided:

"I give, will, and bequeath unto my son William Thomas Close the sum of one thousand dollars, to be paid by deducting the same from the amount he owes me, as evidenced by notes I hold on him."

Shortly before his death, the testator surrendered the notes to his son. We held that the legacy to the son was specific, and not general. We said:

"It was not intended that he should be paid one thousand dollars out of the general estate, and without reference to the notes upon which it was made a charge. The other provisions of the will tend to strengthen this conclusion; for it is evident that the testator intended to bequeath to each of his children one thousand dollars, or its equivalent, and thus place them practically upon an equality. To hold that W. T. Close should not only have the notes, but an additional one thousand dollars as well, would be taking from the other children to benefit him. Evidently, this was not the testator's intention. But, whether this be true or not, the rule seems to be well settled that, if a legacy be given by a parent, or one standing *in loco parentis*, and the testator afterwards make an advancement or gift of money or property *ejusdem generis* to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of, or substitution for, the prior legacy; and, unless this presump-

tion be rebutted, an ademption, in full or *pro tanto,* as the gift is equal to or less than the prior benefit, will occur. *Richardson v. Eveland,* 126 Ill. Sup. 37 (18 N. E. Rep. 308, 1 L. R. A. 203) ; 1 Pomeroy, Equity Jurisdiction, Sections 554–557.; 2 Story, Equity Jurisdiction, Sections 1111, 1112; *Richards v. Humphreys,* 15 Pick. 133; 2 Beach, Modern Equity, Sections 1047, 1050. When the testator surrendered the notes to his son, he made him a gift of the same general nature as he intended to confer upon him by will, and the presumption that it was intended as a satisfaction of the legacy is not met by any showing on the part of the legatee to the contrary.''

So in the case at bar, the presumption arises that the surrender of the notes was not intended as a gift. Under this rule, the final determination of the question, then, must hinge about the transaction of December 24, 1923, at which time the notes were marked canceled, at the direction of the testator, and were delivered by him to the appellee. The burden at this point rested upon the appellee to overcome the presumption that the cancellation and surrender of said notes to the appellee were intended by the testator as a gift, and not in the nature of an ''advancement.'' Under the record, the question is very close at this point.

From a careful examination of the entire record we are constrained to differ from the conclusion of the trial court to the effect that the appellee successfully carried the burden of establishing the transaction as a gift. A circumstance in appellee's favor arises from the fact of the testator's causing the notes to be brought to his house and to be canceled and surrendered to the appellee. But also, at the same time, the testator computed the entire interest to that date, and attached the slip showing the same to the notes when they were delivered to appellee. This is exactly what he would do if he had intended the transaction to be an ademption. It would relieve the appellee of a present outstanding obligation that was payable on demand, and leave the obligation exactly as the testator had provided in his will: to wit, as a loan, to be taken out of the share of the appellee in the administration of the estate, as shown by his books. It must be presumed that the testator knew the terms and conditions of the will, which specifically recited that the obligations of his children which were listed as loans in his account book, and

which were not designated therein as gifts, should be deducted as loans from the share of the parties to whom the loans had been made. Knowing this condition of his will and of his book, the testator, by the cancellation and surrender of the notes, in no way changed the status of the obligation as fixed by the terms of his will and of his book of account. He did postpone payment during his lifetime. Had he intended to make a gift of the obligation evidenced by the notes, the obvious and apparent thing would have been for him to have made an entry in his book, showing that the said loans, as listed therein, were in fact canceled, or were to be treated as gifts. The will specifically provided that, if they were so designated as gifts in the book, they should be treated as such, but if as loans, they should be treated as loans. The testator, knowing this situation, made no change in either will or book. If there had been no notes whatever, the situation would have disclosed loans to the appellee which, under the terms of the will and the recitals of the book, made by reference a part thereof, would have charged the amount against the share of the appellee. The fact that notes had been given, and that the notes were in fact surrendered and marked "paid," does not, in and of itself, overcome the presumption that their surrender was intended merely as an "advancement;" and this is borne out and emphasized by the fact that the testator, knowing the entire situation, made no change in either the book or the will, although the same were readily accessible to him, and he was an experienced business man, in full possession of his faculties, and he lived some eight months thereafter.

Another circumstance of great weight in connection with the matter is the fact that the evident purpose and intention of the testator were to create equality among his children. The doctrine of advancement applied to intestate estates is that equality is equity, and the presumption is that one standing *in loco parentis* intends to do equity, and therefore the presumption of an "advancement" obtains. In the instant case, the testator, by the terms of his will, with the single exception of the bequest to his daughter, expressly declared his intention to make an equal distribution of his property among his children, and specifically provided that loans to his children should be treated as "advancements," and taken from their share in his estate. The presumption is that he intended to carry out the equitable pur-

pose and declaration of his will. He could readily have changed it by codicil, or by a slight entry in the account book referred to, indicating that the loans to appellee therein listed were in fact gifts. This he did not do.

Aside from the transaction of the cancellation and delivery of the notes to appellee, the appellee relies upon the record in regard to the testator's return to the United States government for income tax, as indicating his intention to make a gift of the amount represented by the notes. In making up his income tax for the year 1924, which the record shows was prepared by the testator personally, he listed as deductions from said income tax, "worthless note, $6,000." It is conceded that this item referred to the notes in question. The income tax return was prepared by the testator personally, shortly after he had the computation made upon the notes and canceled them and turned them over to the appellee. Whether he contemplated by the transaction that this would justify him in deducting the approximate amount due on the notes as "worthless note," in his income tax report, is a mere matter of speculation and conjecture; for there is no evidence thereon except the attendant circumstances. The testator may have felt that, so far as he was concerned, there was no possibility of his collecting the notes during his lifetime from the appellee, and that he could quite properly and conscientiously list them as "worthless notes" in the income tax return, even though he did not intend thereby to change the terms and conditions of his will, or to make a complete and absolute gift of the obligation represented by said notes to the appellee, in the event of his death. He may well have regarded the notes as "worthless" in *his* hands during his lifetime, and have felt justified in making the deduction so far as the income tax was concerned, without intending in any way to disturb the terms and conditions of his will, or to change his obvious and declared intention to have his property distributed equally among his children, with the one exception noted. Upon the whole record, we are constrained to hold that the trial court was in error in holding that the appellee had overcome the presumption that must prevail, under the circumstances of this case, that the testator, by the delivery of said notes to the appellee, intended an "advancement," rather than a gift. The testator's will showed a clear intention to distribute his property equally among his three

children, except the daughter. He had expressly provided that loans listed as such in his account book should be taken from the share of the party to whom the loans had been made, unless the account book showed otherwise. He was an intelligent, experienced, careful business man. His account book and his will were both readily accessible to him. He made no change in his will, and he made no notation in the account book indicating that the bills receivable listed therein as loans to the appellee had been changed to gifts. The cancellation and surrender of the notes and the making of the income tax report, under all of the circumstances disclosed by the record, are not sufficient, in our judgment, to overcome the presumption that prevails in such a case and to defeat the obvious and declared purpose and intent of the testator, as expressed in his will.

We reach the conclusion that the order of the trial court must be reversed and the cause remanded for an order consistent with this opinion. The motion of the appellee to dismiss or affirm, which was ordered submitted with the case, is overruled. —*Reversed.*

EVANS, C. J., and STEVENS and MORLING, JJ., concur.

DE GRAFF, VERMILION, and ALBERT, JJ., would affirm, on the ground that there was a completed gift, and hence they dissent.