Marcella L. HARPER and Helen Mathers, Appellees,

v.

Nicholas R. COAD, Appellant,

and

Carolyn I. McNALLY, Individually and as Co-Executor of the Estate of Lucile M. Coad, Deceased, Appellee.

No. 54640.

Supreme Court of Iowa.

Nov. 11, 1971.

Kindig, Beebe, McCluhan & Rawlings, Sioux City, for appellant.

Braun, Kendrick, Finkbeiner, Schafer & Murphy, Saginaw, Mich. and Roseberry & Down, Le Mars, for appellees Harper and Mathers.

James M. McNally, Le Mars, for appellee McNally.

UHLENHOPP, Justice.

This is an appeal in a partition suit involving several financial disputes among members of a family.

Lucile M. Coad ("testatrix"), a widow residing in Plymouth County, Iowa, died on February 8, 1966, seized in fee of nine tracts of unencumbered real estate consisting of farms and town properties in Plymouth County as well as 1,775 acres of unencumbered land in the Red River Valley of Minnesota. She also owned a modest bank account, some bank stock, household goods, and personal effects. She was survived by her five adult children— Charles R. Coad, Helen M. Mathers, Carolyn I. McNally, Marcella L. Harper, and Nicholas R. Coad. She left a will which was admitted to probate in Plymouth County on February 15, 1966.

Testatrix' will, made on July 25, 1961, stated in relevant part:

THIRD: I, will, devise and bequeath all of my property, real, personal or mixed and wherever situated, unto my beloved children, Charles R. Coad, Helen M. Mathers, Carolyn I. McNally, Marcella L. Harper and Nicholas R. Coad, in equal shares, share and share alike, subject only to the following as respecting each individual share of my said children so devised herein;

A. [anti-lapse provision].

B. In prior years I have and will possibly in the future make gifts to my children, either in the form of real estate or personal property. In this respect I have given property in the following values respectively, to-wit:

| | |
|---|---|
| Charles R. Coad, real estate, value | $24,000.00 |
| Nicholas R. Coad, real estate, value | 9,600.00 |
| Carolyn I. McNally, real estate, value | 3,000.00 |

I desire that the foregoing gifts at said values shall be taken into consideration in the division of my estate so that each of my children or their respective successors shall receive a substantially equal amount of my property, whether transferred by this Will or by gifts intervivos. In addition to the foregoing if I shall hereafter make further gifts of real estate or personal property to some or all of my children during my lifetime the value of such gifts as of the date of said gifts shall likewise be taken into consideration in the division of my estate un-

der this will to accomplish said purpose of treating my children equally.

The events which gave rise to this litigation go back to 1945. That year testatrix inherited from her mother all of the real estate involved in this suit, except one town property. The farms were badly run down, having been over-cropped during the war years. Nicholas and Charles set about to improve them. They spent much effort and money during ensuing years doing so, and the farms were improved substantially in productivity and value. Charles and Nicholas contend that their shares in the estate should be increased as a result of such efforts by them.

On examination at trial, however, Charles and Nicholas expressed the thought that the work was done because they believed the land would stay in the family, and Nicholas testified they had no intention to charge for the improvements prior to the partition suit.

Moreover, from 1945 to 1966, testatrix wrote checks to Charles for $103,000. Charles contends that those funds were obtained by bank loans which he repaid, but the bank records show that $44,500 of such funds were not repaid. In addition, testatrix paid to others $13,467.73 for labor and material which Charles acknowledged most likely went into farm improvements.

The evidence also reveals that from 1945 to the time of testatrix' death, Charles rented two of her farms and a town house, but paid the rent according to her discretion depending on whether she needed it. He testified that she took some rent but that likely none was paid for many years. The rental on one of the farms was only $5 per acre, whereas after testatrix' death it was substantially increased.

The evidence discloses that testatrix paid Nicholas $36,726.81 by checks from 1948 to 1966. Of this sum, $12,700 was paid after testatrix executed her will—a matter to which we will return.

Nicholas also rented two of testatrix' farms from 1948 to the time of her death. For all of those years he paid a total of $12,000 rent. In addition, he occupied one of her town houses rent-free for six to eight years prior to her death. The evidence shows the rental value of the house is $125 per month.

At the time of her death, testatrix was indebted to banks in the sum of $46,621.65 on her own notes, which the executors paid. She was also surety on notes of Nicholas for $31,500, which her executors likewise paid.

After testatrix' death, Charles and Nicholas leased some of the real estate from the executors, but paid only a fraction of the rent.

Also after testatrix' death, five tracts of her Iowa real estate were sold by agreement of all parties to pay expenses. Four tracts in Iowa remain, as well as the Minnesota land.

The five children were unable to agree among themselves upon division of the remaining real estate or upon a settlement of their financial affairs. Hence, Marcella and Helen commenced the instant partition suit as to the four remaining Iowa tracts. In their petition they prayed that the four tracts be sold and that the proceeds be divided after determination of financial obligations of the parties. In the latter respect, they prayed that the three gifts listed in the will as well as gifts made after the will was executed be taken into consideration, that Nicholas be charged with $31,500 and interest for which testatrix was his surety, and that Charles and Nicholas be charged with unpaid rent for the period after testatrix' death.

Charles and Nicholas answered. They asked the court to divide the land and lots in kind and in so doing to make allowance to them for the improvements they had made since 1946 and also for personal services they had performed and items they

had furnished as averred in their paragraphs 19, 20, and 21:

19. That in addition thereto the decedent for a great many years was an invalid, confined to a wheelchair and these defendants, at the special instance and request of the decedent, rendered substantial personal services in caring for her personal wants and performed a great amount of labor in this connection in the reasonable value of at least $30,-000 between the year 1946 and the present time.

20. That further and at the special instance and request of the decedent these defendants managed the extensive farm holdings of the decedent as well as her city properties, including the farmland which he [sic] owned in the State of Minnesota which necessitated several yearly trips to the State of Minnesota and that the reasonable value of said management services is the sum of at least $40,000 for the period·between 1946 and the present time.

21. That these defendants also purchased and paid for extensive amounts of supplies, seed and fertilizer which were used on the various properties of the decedent for which they have not been reimbursed in the amount of at least $25,000.

Charles and Nicholas also filed a cross-petition for the services and items averred in paragraphs 19, 20, and 21 of their answer. They did not file claims in testatrix' estate for the matters included in those three paragraphs.

On motion, the trial court (Kennedy, J.) struck paragraphs 19, 20, and 21 from the answer and cross-petition.

The suit came on for trial (before Stilwill, J.). The first witness, Carolyn I. McNally, testified as to events since 1946. On cross-examination, Mr. Beebe, counsel for Charles and Nicholas, entered upon the matters in stricken paragraphs 19, 20, and 21, and this transpired:

Q. Mrs. McNally is it a fact during the last ten years of Mrs. Coad's life Charles and Nicholas were the ones who physically took care of her? A. What do you mean by that?

Q. Bought groceries for her, took care of her insulin shots? A. Not 100% no, that isn't true.

Q. Who else did take care of her?

The Court: Hasn't that been removed from this case by Judge Kennedy?

Mr. Beebe: I believe you are right.

Mr. Beebe pursued the matter no further, although counsel for other parties made inquiries later in the trial as to whether payment had been made for the services and items.

After trial, the trial court adjudicated the parties' shares in the four tracts in accordance with the will, decreed that division could not be made in kind, and ordered sale of the real estate and division of the proceeds subject to adjustments. By way of adjustments, the trial court required reductions for the three gifts specified in the will, required a reduction in the share of Nicholas for $12,700 for additional gifts made by testatrix after the will was executed, required an additional reduction in the share of Nicholas for $31,500 and interest for his notes which the executors paid, and required reductions in the shares of Charles and Nicholas for unpaid rent for the period after testatrix' death. But the trial court denied any increase in the shares of Charles and Nicholas for improving the farms.

Nicholas alone appealed the suit to us. In this court he asserts three propositions: (1) He should be given credit for the increase in the value of the land which resulted from his expenditures and efforts; (2) he should not be charged with alleged gifts of $12,700 made after the will was executed; and (3) his claims in paragraphs 19, 20, and 21 of the answer, and in

the cross-petition, should not have been stricken.

■ I. *Improving the Land.* No one can gainsay that Charles and Nicholas substantially improved the farms, especially in the first years following 1946. The parties argue the legal question as to whether Charles and Nicholas can recover for improvements made in testatrix' lifetime, when they were her tenants from year to year. But, like the trial court, we find consideration of the legal principles unnecessary. The issue turns on the facts. The evidence clearly shows that testatrix made large financial outlays on account of the improvements, that the two sons farmed lands and also occupied houses for very little rent indeed, and that they received substantial sums from testatrix. They have had their reward, at least, insofar as improvements in the farms are concerned.

Testatrix was an elderly lady of frugal habits and modest needs. In 1946 she owned nine tracts of unencumbered Iowa real estate plus 1,775 acres of land in northwest Minnesota. She had no debt. Twenty years later she was in debt $46,-621.65. We agree with the trial court when it said:

> It is clear to the court that Mrs. Coad made substantial financial contributions to the farm improvements and that she forewent the payment of rent consistently in consideration of the efforts of her sons in up-grading the farms. Certainly, she had no thought that anything was owed when her will was drawn. If she had she would not have charged the sons with advancements made to them. Nor did Charles and Nicholas have any thought that the books were anything but even. Their testimony indicates that. The court concludes that improvements upon the farms were made jointly by the mother and her sons and that the sons have been fully compensated for their labor and efforts.

We sustain the decree in denying Nicholas any increase in his share based on farm improvements.

II. *Post-Will Advancements.* Testatrix paid Nicholas various amounts by checks for a number of years prior to making her will. She made her will on July 25, 1961. Between that date and the date of her death, she paid him the sum of $12,700 by checks. Were those post-will payments "gifts" within the meaning of the will to be taken into account on final division? The trial court held they were.

■ Technically, the doctrine of advancements does not apply when a will exists. In re Estate of Morgan, 225 Iowa 746, 281 N.W. 346. Consequently, the statute on advancements in intestacy cases is inapplicable, and the language of the will controls. In re Estate of Palmer, 194 Iowa 611, 614, 190 N.W. 30, 31–32 ("Where property is disposed of by will, the statute is not applicable thereto. The language of the will controls the disposition of the estate. Whether, in such a case the amount of an advancement is to be charged against a share does not depend upon any presumption of the statute but upon the language of the will."). Whether certain payments made by a testatrix are within the provisions of her will requiring deduction depends upon testatrix' intention when she made the payments, as shown by the surrounding circumstances at that time and the language of the will itself. In re Estate of Barnes, 177 Iowa 122, 158 N.W. 754.

In this case testatrix devised all her real and personal property to her children "share and share alike," subject however to deductions. She stated in the will that she had in the past made gifts of property to three children which were to be deducted from their shares so that each child would receive "a substantially equal amount of my property". She further expressly stated that she might possibly in the future make gifts to her children of real estate or personal property. She directed that if she did make such gifts, their value should be taken into consideration in the division of the estate "to accomplish said purpose of treating my children equally." Clearly,

any post-will gifts by testatrix to her children are to be deducted, under the unambiguous terms of the will.

■ Nicholas first argues that testatrix intended only gifts of tangible personal property or of real property are to be deducted, not gifts of money. We are not persuaded, however, by the argument. Testatrix' actual words were "real estate or personal property". Those terms taken together encompass all property. She did not restrict the gifts to "corporeal" or "tangible" personal property. The unrestricted words "personal property" in a will have been held to include money. Bromberg v. McArdle, 172 Ala. 270, 55 So. 805; Skinner v. Spann, 175 Ind. 672, 93 N.E. 1061, 95 N.E. 243; Fry v. Feamster, 36 W.Va. 454, 15 S.E. 253; see also 96 C. J.S. Wills § 759(e) at 163.

In this connection, testatrix' expressed desire to treat her children equally is important. In re Estate of Francis, 204 Iowa 1237, 1244, 212 N.W. 306, 309 ("Another circumstance of great weight in connection with the matter is the fact that the evident purpose and intention of the testator were to create equality among his children."). Inequality would result just as much by failing to consider gifts of money as by failing to consider gifts of tangible personal property.

■ Nicholas next argues that the sums he received were in payment for his taking care of testatrix. The argument is hard to accept in view of the amounts and times of the payments. At the trial, testatrix' cancelled checks and bank records were introduced. They revealed little relationship in point of time to alleged services rendered. In 1963, for example, Nicholas received $1,000 from testatrix on January 12, $500 on January 24, $5,000 on July 18, $1,500 additional on the same date, and $200 on August 7. After seeing and listening to the witnesses, the trial court held that it was "simply unable to give credence to Nicholas's testimony with respect to these checks or his contention that they were in payment for 'help and personal services.' " Although in equity appeals we are not bound by the findings of trial courts on the credibility of witnesses, we give weight to such findings. Rule 344(f) (7), Rules of Civil Procedure; Holsteen v. Thompson, 169 N.W.2d 554 (Iowa). Upon consideration of all the relevant evidence, we approve the trial court's finding on this issue. We hold that the share of Nicholas was properly reduced by the amount of $12,700 which he received after the will was made.

III. *Striking of Paragraphs 19, 20, and 21.* Nicholas contends that he never had his day in court on his claims for services in caring for testatrix and managing her property and for furnishing her various items. Those claims were stricken from the pleadings by the trial court.

This branch of the appeal involves three issues: (a) Could these claims be pleaded in a partition suit? (b) Was Nicholas required to assert them in a claim against the estate? and (c) Were the claims barred by the nonclaim statute?

(a) Our rule in partition provides (R.C. P. 275):

Except as permitted by this rule there shall be no joinder of any other cause of action and no counterclaim. But any party may perfect or quiet title to the property, or have an adjudication of the rights of any or all parties as to any or all matters growing out of or connected with it, including liens between them. * * *

Rule 279, after enumerating various matters to be included in partition decrees, provides that "All other matters involved in the cause, including those relating to liens, may be determined by the same decree, or later supplemental decree or decrees."

■ In the present case plaintiffs not only asked partition but they also asked for a reduction in the share of Nicholas for payments made by the executors of notes

of Nicholas on which testatrix was surety. See, as somewhat similar, Finch v. Garrett, 102 Iowa 381, 71 N.W. 429. In this state of affairs we think Nicholas was entitled to try to offset those payments by showing, if he could, that testatrix was also indebted to him for services and items he furnished her. Plaintiffs themselves brought the collateral matters into the suit. Since Nicholas did not file claims in the estate for the subjects of paragraphs 19, 20, and 21, he would lose those claims altogether if he could not interpose them as offsets, at the very time that the executors' demand against him as to the notes was being enforced. This court has used broad language regarding the scope of partition in adjusting all the rights and equities of the parties. Bauer v. Bauer, 221 Iowa 782, 266 N.W. 531; Kramer v. Hofmann, 218 Iowa 1269, 257 N.W. 361; Stevens v. Pels, 191 Iowa 176, 175 N.W. 303. We hold that Nicholas is entitled to try to offset the demand of the executors arising in connection with the notes on which testatrix was surety. We so hold although those notes were not paid until after testatrix' death, for the executors' demand is founded on a right of testatrix as one who was only secondarily liable and not on an independent transaction between the executors and Nicholas. For a case of the latter sort, see Dillinger v. Steele, 207 Iowa 20, 222 N.W. 564.

 (b) When an individual is sued by fiduciaries of an estate on an alleged obligation to the decedent, he may plead as an offset an obligation of the decedent to him although he did not file a claim in the decedent's estate. See Ware v. Howley, 68 Iowa 633, 27 N.W. 789; 34 C.J.S. Executors and Administrators § 722 at 711–713. Paragraphs 19, 20, and 21 fall within this principle.

(c) The claims of Nicholas under the three paragraphs in question are barred as affirmative claims by virtue of the statute of nonclaim, since more than six months have elapsed and he suggests no

peculiar circumstances entitling him to equitable relief. Code, 1971, § 633.410. Notwithstanding, the claims are available as offsets. In re Estate of Stephenson, 234 Iowa 1315, 14 N.W.2d 684. Since they are only available as offsets, the claims were properly stricken from the cross-petition. They were, however, erroneously stricken from the answer. If on trial the claims are established in whole or in part, they will be available as an offset to the extent of the sum of $31,500 (and interest) paid by the executors to discharge the notes of Nicholas.

In sum, we sustain in full the decree of the trial court after trial, but we reverse as to Nicholas only the order striking paragraphs 19, 20, and 21 of the answer. As to that, the case must be remanded. The parties may make up the issues as to those paragraphs and try that remaining part of the case.

Affirmed in part, reversed in part, and remanded.

All Justices concur except RAWLINGS, J., who takes no part.