Mrs. F. R. RODGERS et al., Appellants and Appellees, v. DANIEL P. REINKING et al., Appellants and Appellees.

JANUARY 10, 1928.

REHEARING DENIED MAY 11, 1928.

*Clark, Byers & Brunk,* for plaintiffs, appellants and appellees.

*Parrish, Cohen, Guthrie, Watters & Halloran,* for Southern Surety Company and Daniel P. Reinking, appellants and appellees.

*C. E. Hunn and Hiram Hunn,* for George F. Reinking, Clara Hope Reinking Schwartz, Carrie Ethelyn Reinking Taylor, Hoyt C. Reinking, Eva Crane King, F. W. Bush, and Bankers Accident Insurance Company, appellees.

*Will C. Rayburn,* for J. C. Goodrich and George F. Reinking, Trustees, American Board of Commissioners for Foreign Missions, Anna Eder, Nellie S. Towle, Nellie Green Clarke, and Nellie Clarke Parker, appellees.

*Malcolm Currie,* for State Bank of Schaller, appellee.

*Arthur T. Wallace,* for Home Savings Bank, appellee.

*Carr, Cox, Evans & Riley,* for Texas Company, appellee.

PER CURIAM.—The following facts appear in the record in the case:

On June 14, 1897, Vera Jones, daughter of Conrad D. Reinking, died intestate, leaving the plaintiffs as her surviving children and heirs. On March 4, 1902, Conrad D. Reinking died, seized in fee of 640 acres of land, situated in Polk County, Iowa. Said decedent left a will which, on August 2, 1902, by the district court of Polk County was held void. The said real estate then passed to the widow and heirs of said decedent,

as follows: to Ellen P. Reinking, widow, one third; George F. Reinking, son, Daniel P. Reinking, son, and Ella Reinking Towle, daughter, each one sixth; plaintiffs, each one thirtieth. On July 23, 1912, Ellen P. Reinking executed her last will and testament. On November 30, 1912, Ellen P. Reinking and Daniel P. Reinking entered into a contract, by which Daniel P. Reinking received $60,000 from Ellen P. Reinking. This contract will be set out later in this opinion. On December 26, 1917, Ella Reinking Towle, daughter of Conrad, and a widow, died testate, without issue, and left surviving her, as her only heir at law, her mother, Ellen P. Reinking. On February 28, 1920, George P. Reinking and his wife executed a $7,500 mortgage to the Bankers Accident Insurance Company on his undivided one-sixth interest in the above described land. On September 8, 1920, Ellen P. Reinking, widow of Conrad, died testate, seized of an undivided one-third interest in the land in question and the fee of her homestead in the city of Des Moines. She also had certain personal property. Her will was admitted to probate in Polk County, July 23, 1922. On October 2, 1920, the district court in and for Poweshiek County, Iowa, construed the will of Ella Reinking Towle, and confirmed the title to her undivided one-sixth interest in the land in question in her executors. On December 1, 1920, Daniel P. Reinking and his wife executed a mortgage to the Southern Surety Company for $30,000, which purported to convey an undivided one-third interest in said land. On the 23d day of March, 1921, Daniel P. Reinking and his wife executed another mortgage to the Southern Surety Company for $10,000, on an undivided one-third interest in said land. On the 28th day of January, 1922, a judgment was entered in favor of the Home Savings Bank against Daniel P. Reinking, for $5,321.22. On the 14th day of February, 1922, a transcript of a judgment in favor of the State Bank of Schaller, Iowa, against Daniel P. Reinking and Hoyt C. Reinking, was filed in Polk County, Iowa, for $5,652. On June 30, 1922, George F. Reinking brought an action in Polk County against Daniel P. Reinking, in which he asked for payment of $30,000. Later, this action was dismissed, without prejudice. On July 17, 1922, a judgment in favor of the Texas Company was entered against Daniel P. Reinking for $3,352.68. On November 2, 1923, a transcript of the pro-

ceedings, including the decree in the Ella Reinking Towle estate in the district court of Poweshiek County, Iowa, was filed in Polk County, Iowa. On December 24, 1923, an execution was issued on the judgment of the State Bank at Schaller, Iowa, and on December 26, 1923, Daniel P. Reinking, as executor of the estate of Ellen P. Reinking, was attached, as garnishee of Daniel P. Reinking and Hoyt C. Reinking under said execution.

The will of Ellen P. Reinking, widow of Conrad, was executed July 23, 1912. By a residuary clause, all the property not specifically devised or bequeathed was given in equal shares to her three children, Ella Towle, George F. Reinking, and Daniel P. Reinking.

I. We first consider the question of the respective shares of the parties in the property involved. Upon the death of  Conrad, intestate, the 640-acre farm passed one third to his widow, Ellen P., and one sixth to the plaintiffs in common, one sixth to George, one sixth to Daniel, and one sixth to Ella Towle. Thereafter, the widow, Ellen, made a will, and by the residuary clause thereof devised her estate equally to her three children, George, Daniel, and Ella Towle. Before the death of Ellen, however, the daughter, Ella Towle, had died. The question at this point is whether or not the devise to Ella Towle under the residuary clause of the will of her mother, Ellen, lapsed, or passed to her heirs at law. There is no provision whatever in the will of Ellen indicating any intent whatever that, in the event of the death of a devisee, the property devised to such devisee should not pass as provided by the statute. Section 11861, Code of 1924, is as follows:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

Under the statute and the will of Ellen, the share devised to Ella Towle passed to her heirs, and did not lapse.

The shares of the respective parties in and to the real estate involved were correctly fixed and established by the decree of the trial court. See *McAllister v. McAllister,* 183 Iowa 245; *In re Will of Watenpaugh,* 192 Iowa 1178; *In re Estate of Mikkelsen,* 202 Iowa 842.

II. The most important single item involved in this ap-

peal centers about the contract between Ellen and Daniel. Said contract is as follows:

"This agreement made and entered into by and between Ellen P. Reinking, hereinafter referred to as first party, and Daniel P. Reinking, hereinafter referred to as second party, on this 30th day of November, 1912, witnesseth:

"1st. All former agreements in relation to the sixty thousand dollars held and invested by second party for first party are hereby canceled and annulled and the proceeds and earnings from said money have been paid in full by second party to first party and all matters relating thereto have been fully settled and adjusted to this date.

"2nd. The first party, in consideration of love and affection and the further considerations, promises, agreements, and covenants hereinafter set out, hereby gives, delivers and assigns to second party said sixty thousand dollars hereinbefore referred to and all investments and securities which have been purchased by said money or any part thereof as his sole and absolute property, free and clear from any and all claims of any and all persons whatsoever.

"3rd. The second party in consideration thereof agrees and promises on behalf of himself, his heirs, executors or administrators, to pay first party the sum of two hundred (200) dollars on the first day of December, 1912; two hundred (200) dollars on the first day of January, 1913, and two hundred (200) dollars on the first day of each succeeding month thereafter during the life of first party, and on or before one year after the death of first party, second party promises and hereby agrees to pay his brother, George F. Reinking or his heirs the sum of twenty thousand dollars with four per cent interest thereon from the date of the death of first party, and on or before one year after the death of first party, second party promises and hereby agrees to pay to his sister, Mrs. E. R. Towle, the sum of twenty thousand dollars with four per cent interest thereon from the date of the death of first party, provided however, that in case of the death of Mrs. E. R. Towle prior to the death of first party, then this obligation on the part of second party to pay twenty thousand dollars to Mrs. E. R. Towle shall be null and of no effect but said second party shall pay to his said brother George F. Reinking or his heirs the

sum of thirty thousand dollars in lieu of twenty thousand dollars above referred to on or before one year after the death of first party with four per cent interest from the date of the death of first party."

The record establishes that Daniel has never paid to George the $30,000 mentioned in said agreement. At the time of the death of Ellen, Daniel was insolvent, and he has remained so ever since. The personal property belonging to Ellen was insufficient to pay the claims filed against her estate. The trial court found:

"That Daniel P. Reinking was and is indebted to the estate of his mother in the sum of thirty thousand and no/100 ($30,000) dollars, with 6 per cent interest thereon from the date of his mother's death to the date of distribution, and that this debt is a part of the assets of the estate, and must be brought into hotchpot, and charged against the undivided four twenty-sevenths of the land above described, and the undivided four ninths of the proceeds of the homestead above described, otherwise belonging to Daniel P. Reinking, until satisfaction of said sums is made, and until distribution is made to the other heirs of Ellen P. Reinking as though payment of said sums had been made to the estate."

Decree was entered in accordance with said findings.

It is the contention of the plaintiffs and George that the entire $60,000 in the hands of Daniel under the contract should be brought into hotchpot, and charged against his share, superior to the rights of the creditors holding liens on his interest which were acquired after the death of the testatrix Ellen. Daniel and his creditors contend that the court erred in holding that Daniel was indebted to Ellen's estate in any amount, and they deny that there was any right of retainer or offset.

The will of Ellen was executed July 23, 1912. The contract between Ellen and Daniel was executed November 30, 1912. Just when Daniel received the $60,000 from testatrix does not clearly appear in the record, but he had received it all prior to the execution of said contract. The daughter, Ella Towle, died December 26, 1917.

Under the terms of the contract, it is plain that, in such a situation, the obligation rested upon Daniel to pay to George the sum of $30,000. He has not paid any of this. Our problem

is to determine the rights of all parties under this state of facts.

III. Did the contract between Ellen and Daniel constitute a completed gift of said $60,000 to Daniel? The contract recites:

"The first party, in consideration of love and affection, and the further considerations, promises, agreements, and covenants hereinafter set out, hereby gives, delivers and assigns to second party said sixty thousand dollars hereinbefore referred to and all investments and securities which have been purchased by said money or any part thereof as his sole and absolute property, free and clear from any and all claims of any and all persons whatsoever."

This language, when construed in the light of the remainder of the contract and all the surrounding facts, is not conclusive that Ellen intended thereby to make a completed gift of the $60,000, or any part thereof, to Daniel.

It appears that Daniel had already invested the funds for his mother. The evident purpose was to place the legal title to the securities in which the funds had been invested in Daniel, so that he might handle them to the best effect. When the instrument is construed in its entirety, it clearly appears that it was not the intention of Ellen to give Daniel $60,000 more of her property than her other children; and, reading the instrument as a whole, in the light of all the circumstances, we do not think that the transaction can be held to be a completed gift of said $60,000 to Daniel.

IV. Was said $60,000 under said contract in whole or in part an ademption or a *pro tanto* satisfaction of the devise to Daniel in the will of Ellen?

The contract cannot properly be treated as an advancement to Daniel, because the doctrine of advancement applies only in cases where the decedent dies intestate. *In re Estate of Francis,* 204 Iowa 1237; *In re Estate of Palmer,* 194 Iowa 611; *In re Estate of Mikkelsen,* supra; *In re Estate of Hall,* 132 Iowa 664. It is not essential, in order that there be an ademption or *pro tanto* satisfaction of a devise, in such a case, that the written instrument shall specially so provide; but the court must determine from all the facts and surrounding circumstances whether

it was the intention of the testatrix to make an ademption or a *pro tanto* satisfaction of a devise already existing in a will. We recently had occasion to review this question in the case of *In re Estate of Francis,* supra. In said case we quoted with approval from *Davis v. Close,* 104 Iowa 261, as follows:

" * * * the rule seems to be well settled that, if a legacy be given by a parent, or one standing *in loco parentis,* and the testator afterwards make an advancement or gift of money or property *ejusdem generis* to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of, or substitution for, the prior legacy; and, unless this presumption be rebutted, an ademption, in full or *pro tanto,* as the gift is equal to or less than the prior benefit, will occur. *Richardson v. Eveland,* 126 Ill. Sup. 37 (18 N. E. Rep. 308, 1 L. R. A. 203) ; 1 Pomeroy, Equity Jurisdiction [Jurisprudence], Sections 554-557; Story, Equity Jurisdiction [Jurisprudence], Sections 1111, 1112; *Richards v. Humphreys,* 15 Pick. [Mass.] 133; Beach, Modern Equity, Sections 1047, 1050. When the testator surrendered the notes to his son, he made him a gift of the same general nature as he intended to confer upon him by will, and the presumption that it was intended as a satisfaction of the legacy is not met by any showing on the part of the legatee to the contrary."

We applied this rule in the *Francis* case.

We must examine the written instruments and the surrounding facts and circumstances, to ascertain the intent of the testatrix as to whether the contract with Daniel was merely a contract to be performed by Daniel, with resulting damages for breach thereof, or was in the nature of an ademption or *pro tanto* satisfaction, and should be established as such. Taking the will and the contract with Daniel and considering them together, under all the surrounding circumstances, we think that it was the intention of the testatrix to make an equal division of her property among her three children, Ella, Daniel, and George. The will clearly so provides. Subsequently to the execution of the will, it appeared that testatrix had turned over to Daniel $60,000 of her estate. Just when this was done does not definitely appear; but it is certain that, at the time of the execution of the contract, Daniel already had in his possession $60,000 belonging to the testatrix. We think it is quite clear

and plain that the testatrix intended that, after her death, under the conditions as they then existed, Daniel should have $30,000 of the $60,000 in his own right. She did not intend this to be in *addition* to his share in her estate under her will, but rather, to be retained by him as a part of her estate which he had already received under the contract. Reading the will and the contract together, in the light of the circumstances, and under the rules of law applicable thereto, we are constrained to hold that $30,000 received by Daniel under said contract was an ademption or *pro tanto* satisfaction of his share as a legatee under his mother's will, and in the distribution of the assets of said estate he should be charged with having received said sum as an ademption, and it must be deducted from his share.

V. Another question yet remains for determination. Daniel has not paid the $30,000 which, under the terms of the contract, he agreed to pay to George. Can the executor of Ellen's estate recover the $30,000 which he was to pay George under the contract?

The contract between Ellen and Daniel was a valid contract, based on a sufficient consideration. Under it Daniel was the promisor, Ellen the promisee, and George the donee-bene-ficiary. It was unnecessary that George assent to the contract, or that he have knowledge of its existence. What remedy, if any, he may have against Daniel, at law or in equity, is not before us. The sole question at this point is whether or not the executor of Ellen's estate can recover from Daniel for his failure to perform the contract by paying the $30,000 to George. It is to be remembered that the property of Ellen, to the extent of $60,000, was placed in the hands of Daniel. The obvious purpose of the promisee, Ellen, was to provide for its distribution among her children, as provided in said contract. As we have seen, $30,000 of this amount was a *pro tanto* satisfaction of a devise to Daniel under Ellen's existing will. The other $30,000 was to be paid to George in reality as a part of his share in Ellen's estate, and if it had been so paid by Daniel, would have operated as a *pro tanto* satisfaction of the devise to George under Ellen's will. In a very proper sense it may be said that Daniel held the $30,000 in trust for the benefit of George, as a part of his share in Ellen's estate.

All parties are before the court, and the action is in equity.

We think that, under the facts of this case, the promisee, Ellen, could maintain an action against the promisor, Daniel, for his failure to perform his contract by paying over to George the $30,000 placed in his hands for that purpose by Ellen. Daniel is not placed in the position of being liable to two parties, because all parties are before the court in a proceeding in equity, and a decree can fully protect his rights. The measure of recovery on the part of Ellen's estate, under such a state of facts as disclosed herein, is more than nominal for breach of Daniel's contract to pay $30,000 to George. It is analogous to a promise to pay a debt to a creditor of Ellen's. Daniel has failed to pay or turn over the funds in his hands which Ellen intrusted to him, as he contracted to do. The estate of Ellen is entitled to recover the same against Daniel. In other words, under the facts of this case, the promisee is entitled to recover, in a court of equity, under the contract made with Daniel for the benefit of the donee beneficiary, George, the amount provided in the contract.

In *Dorr Cattle Co. v. Jewett*, 116 Iowa 93, we had a question which we stated thus:

"The abstract question, then, is whether, when two persons enter into an agreement by which, on a consideration, proceeding from one of them, the other agrees to confer a benefit upon a third party, which latter agreement is not performed, there is a right of action for the breach in favor of the first party to the contract, or whether, on the other hand, the sole right of action is in favor of the person to whose benefit the act to be done by the second party was to inure."

We said:

" * * * there is no statutory provision which deprives the person to whom, on a consideration proceeding from himself, a promise is made to pay or deliver property to a third person, presumably for the ultimate benefit or advantage also of the party furnishing the consideration, of a right to maintain an action in his own name for damage resulting to him for breach of the contract by the other party. The proposition seems too simple to require argument or authority, that plaintiff, having parted with its property in consideration of a promise by de-

fendant which he has never performed, may recover the damages which it has suffered.''

As bearing somewhat upon the question involved, see *Foster v. Marsh*, 25 Iowa 300.

There is a full discussion of the question involved at this point, with extensive citation of authorities, in 1 Williston on Contracts, Chapter XIII, and especially Section 390 *et seq.*

We reach the conclusion that, under the facts of this case, the estate of Ellen, represented by her executor, was entitled to a decree against Daniel for the said $30,000 which Daniel had agreed to pay to the donee-beneficiary, George, under the contract between Ellen and Daniel.

VI.   One further question remains for consideration, and that is whether or not the estate of Ellen is entitled to a retainer or offset of said $30,000 against the share of Daniel in said estate. We have recently had this question before us in the case of *Schultz v. Locke*, 204 Iowa 1127. It is needless to repeat the discussion at this time. Following the rule therein announced, we hold that the estate of Ellen, through the executor, was entitled to a retainer to the amount of $30,000 of the share going to Daniel under the provisions of the will of Ellen.

Except as indicated herein, the decree of the trial court is affirmed.

A decree will be entered in this court, upon motion, in accordance with this opinion, or decree may be entered in the trial court, as the parties may elect.—*Affirmed in part; reversed in part.*

STEVENS, C. J., and FAVILLE, ALBERT, KINDIG, and WAGNER, JJ., concur.

EVANS, J., takes no part.