ELIZA STANTON, APPELLEE, V. EDWARD C. STANTON ET AL., APPELLEES: KENESAW STATE BANK, APPELLANT.

279 N. W. 336

FILED APRIL 29, 1938.   No. 30103.

*Tibbets, Canaday & Hewitt,* for appellant.

*King & Bracken, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an appeal from the district court for Kearney county from a decree entered in a partition suit brought by one of the devisees under the will of Patrick W. Stanton, deceased, against the other devisees, partitioning the real estate devised by the will.

The record discloses that Patrick W. Stanton died on August 17, 1929, leaving a will by which he devised a one-eighth interest in his real property to each of his children or their representatives. The one-eighth interest of William P. Stanton is the only one that is involved in this suit.

The evidence shows that on October 17, 1921, William P. Stanton borrowed some money from Patrick W. Stanton, and gave two promissory notes in the amounts of $600 and $204.54 as evidence thereof. Payments of interest were made and indorsed on both notes on December 5, 1925. At the death of Patrick W. Stanton neither of the notes had been paid.

It further appears from the record that the Kenesaw State Bank obtained a judgment against William P. Stanton in the amount of $1,125 and interest and costs on January 25, 1926, and that it was a valid judgment on the date of the death of Patrick W. Stanton, the testator. The Kenesaw

State Bank contends that the judgment became a lien upon the interest of William P. Stanton in the lands devised by the will at the time of the death of Patrick W. Stanton. The plaintiff contends that the amount due the testator as evidenced by the notes given by William P. Stanton should be satisfied from the interest of William P. Stanton before the bank's lien can attach. The trial court sustained plaintiff's contention and the bank has appealed to this court.

It must be borne in mind that the case at bar involves a testate estate and that the will of the testator is silent regarding the indebtedness of William P. Stanton owing to the testator. The indebtedness of William P. Stanton was incurrred prior to the making of testator's will, and, necessarily, prior to the codicil that the testator subsequently executed. The question immediately arises as to whether the debt of William P. Stanton to the testator is an advancement. The doctrine of advancements rests upon the supposed desire of an ancestor to equalize his estate among his heirs, not only as to the property left at the time of his death, but as to all property that came to him, so that one child should not be preferred to another child in the final settlement of his estate. "In its strict technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate." 1 Am. Jur. 715, sec. 3.

"The doctrine of advancements applies only to estates of persons dying intestate unless otherwise provided by statute. Our legislature has acted upon the question of advancements, but has apparently limited the doctrine of advancements to intestate estates; at least it has not gone so far as to apply it to estates of those dying testate." *In re Estate of Gibson,* 130 Neb. 278, 264 N. W. 762. See, also, Comp. St. 1929, secs. 30-112 to 30-116.

In the case of *In re Estate of Gibson, supra,* this court, in passing upon a similar state of facts, said:

"An advancement does not carry with it the obligation of repayment; nor is it founded upon a valuable consideration; while a debt or loan carries with it the obligation of repayment and gives the creditor the right to enforce the same in the courts. The enforceable obligation against the donee would, therefore, be contrary to the character of an advancement and must be viewed in the light of a debt. See 1 R. C. L. 653, sec. 1.

"In the instant case, when Joseph Gibson paid the debt of his son and required the son to recognize his obligation by giving his promissory note, bearing interest and payable at a future date, it was not in the nature of a gift, but was treated as a debt owing by the son to the father. It lacked the characteristics of an advancement. * * * We think that the county court and the district court rightly held that the note was not an advancement but was personalty, and, as such, passed by the will of testator to his widow."

Adopting the logic of Justice Good in the foregoing opinion, we conclude that the testator in loaning the money to William P. Stanton and taking his note therefor, bearing interest, payable at a future date and bearing the indorsements of interest paid apparently to bar the running of the statute of limitations, treated the amount due on the notes as a debt, and, as such, passes by the will to his executor as personalty.

Appellee contends, however, that the doctrine of retainer applies and that the amount owing by William P. Stanton can be retained by the executor from the proceeds of the sale of William P. Stanton's interest in the land.

The cases are uniform in holding that the doctrine of retainer applies where personal property is involved. This court has held that the right of an executor to retain a legacy and apply it *pro tanto* upon the debt of the legatee exists independently of statute. *First Trust Co. v. Cornell,* 114 Neb. 126, 206 N. W. 749. The question whether the right of retainer exists against a debtor heir where real estate is involved and the deceased left no will is one upon which the authorities are divided and upon which this

court has not passed. In view of the fact that a determination of this question is not necessary to a decision in this case, we will not undertake to discuss it here. Suffice it to say that the two contrary rules are ably discussed in *Marvin v. Bowlby*, 142 Mich. 245, 105 N. W. 751, and *Stenson v. H. S. Halvorson Co.*, 28 N. Dak. 151, 147 N. W. 800.

The question for our determination is whether the doctrine of retainer can be applied against the devisee of real estate under a will that is silent as to the devisee's indebtedness to the testator. Our former opinion in this case, 133 Neb. 563, 276 N. W. 180, holds that the doctrine of retainer applies. Upon a reconsideration of the case, after reargument, we have come to the conclusion that we erred in our former opinion.

An heir's distributive share of the personal estate, under all the authorities, may be applied by the administrator or executor in payment of a debt due the estate by such heir. The reason is that the personal estate passes to the administrator or executor, and, while it is in the possession of the administrator or executor, he may retain a sufficient amount of the legatee's share in the personal property to satisfy the claim of the administrator or executor against him. It is this situation that gives rise to the use of the term "retainer." But the title to real estate under a devise in a will is vested in the devisee at the instant of testator's death. *Brown v. Webster*, 87 Neb. 788, 128 N. W. 635; *Fischer v. Sklenar*, 101 Neb. 553, 163 N. W. 861. While it is true that the title of the devisee is subject to the right of the executor to sell the land to pay debts duly allowed against the estate and the expenses of administration, as by statute provided, the surplus will be treated as real estate, and consequently the doctrine of retainer could not apply unless it applies generally to a devise of real estate. *In re Estate of Schram*, 132 Neb. 268, 271 N. W. 694.

The testator, a widower, had the legal right to dispose of his property by will in any manner that he saw fit and, if the intention of the testator can be ascertained from the

will, it is the duty of the court to give it effect. *Luenenborg v. Luenenborg,* 128 Neb. 624, 259 N. W. 649; *In re Estate of Mooney,* 131 Neb. 52, 267 N. W. 196.

In the case of *Dearborn v. Preston,* 7 Allen (Mass.) 192, the court, in holding that the indebtedness owing the testator by a devisee of a share in testator's realty could not be charged against him, said: "The reason why that rule should prevail in reference to devisees to whom real estate is given without words of condition or limitation annexed to the devise is even more strong and obvious than why it should be applied in reference to the inheritance of heirs at law. The testator may prescribe at his own pleasure the terms of his gift; and, if he desires and intends to do so, he may charge and encumber the estate devised with the duty and obligation of paying any debt which shall remain due from the devisee to the testator at the time of his decease. His omission to impose any such condition unequivocally evinces an intention to make his gift absolute and unconditional. And it is a plain and unavoidable consequence of an unrestricted and absolute devise, that the estate devised comes to the devisee entirely free from any encumbrance or liability to be in any part appropriated to the payment or discharge of any debt which was due from him to the testator."

In *LaFoy v. LaFoy,* 43 N. J. Eq. 206, 10 Atl. 266, the court said: "The devisee of lands occupies no such relation to the executor as that which exists between legatee and executor. No act is necessary, on the part of the executor, to put the devisee in full enjoyment of the estate devised. The opportunity, therefore, could not arise for the executor to retain the debt of the devisee to the testator out of any demand which the devisee might seek to enforce against the executor. If such a charge attaches against the land devised, it would be necessary for the executor to establish it by proceedings in which he is the actor. After diligent search, I have been unable to find a case in which an attempt has been made to charge a devise of lands with a debt due from the devisee to the testator, in the absence

of language in the will manifesting the purpose of the testator to do so."

In *Avery Power Machinery Co. v. McAdams,* 177 Ark. 518, 7 S. W. (2d) 770, the court said: "In other words, it may be stated as the settled rule in this state that, except where the indebtedness be held an advancement, the distributive share of an heir or devisee in the real property of the estate is not chargeable with the heir's or devisee's indebtedness to the estate, either as against the land itself or the proceeds of the sale thereof; but the indebtedness must be collected in the same manner as any other indebtedness due the estate."

In the case of *In re Estate of Lyon,* 70 Ia. 375, 30 N. W. 642, the court in a similar case said: "The primary object in all cases is to ascertain the intention of the testator. The will must stand and speak for itself, unless it has been revoked or changed in the manner provided by statute. As the will gives the appellant an equal share of the estate, after the specific legacies have been satisfied, and no mention is made in the will of any advancements having been made to her, or that she is to be charged therewith, the presumption must obtain that such was not the testator's intent. This, it seems to us, must be so; and that it quite clearly appears that it was not the intent of the testator that appellant should be charged with money given her husband prior to the execution of the will, for the reason that he clearly intended she should receive the one-third part of the residue of his estate; and it is clear she would not receive this share if the so-called advancements are to be charged to her."

In *Kuhne v. Gau,* 138 Minn. 34, 163 N. W. 982, the court stated the rule as follows: "The theory is this: The doctrine of advancements has no application to testate estates. If a father gives his daughter $1,000 as an advancement, such amount will, in the event of the father dying intestate, be deducted from the daughter's distributive share of the estate, but, if the father leaves a will, it will not be deducted from the share given her in the will, for the will is

supposed to contain the final manifestation of the testator's bounty, and all advancements not saved by the will are extinguished (*Kragnes v. Kragnes,* 125 Minn. 115, 145 N. W. 785), and though it was understood at the time the payment was made that it should be an advancement, if the donor dies testate it becomes an absolute gift."

Other cases to the same effect are *Campbell v. Martin,* 87 Ind. 577; *Wisner v. Teed,* 9 How. Pr. 143; *Broas v. Broas,* 153 Mich. 310, 116 N. W. 1077.

Appellee relies upon the case of *In re Dayton's Estate,* 173 Okla. 180, 46 Pac. (2d) 933. The opinion in that case shows that Herbert J. Dayton died testate and that the doctrine of retainer was applied to the interest of a devisee. The decision, however, was based upon two Oklahoma statutes, the first of which provided that there shall be no priority as between personal and real property in its sale to pay debts, expenses of administration and the allowance to the family. The second statute provided that the executor or administrator must take into his possession all the estate of the decedent, real and personal, except the homestead and personal property not assets, and collect all debts due to the decedent or to the estate. Under these statutes, real estate is placed in the same status as personal property and the doctrine of retainer applies to the real estate to the same extent that it applies to personal property. This case is not, therefore, authority in the case at bar for the reason that it is founded entirely upon statutes taking it out of the general rule.

We have examined the cases in other jurisdictions and the only court which appears to have departed from the general rule, where a testate estate is involved, is the supreme court of Iowa. In *Russell v. Smith,* 115 Ia. 261, 88 N. W. 361, the Iowa court held: "A purchaser of an heir's share of the decedent's real estate pending administration does not take the land subject to a debt which the heir owed the deceased, the claim not being a lien on the heir's property until reduced to judgment." We think that this holding is in line with the great weight of authority. The

later case of *Senneff v. Brackey,* 165 Ia. 525, 146 N. W. 24, 1 A. L. R. 978, is also relied upon. In that case the testator devised an interest in land to his son who, at testator's death, had a sum of money belonging to the testator in his possession which he refused to turn over to the administrator. The obligation did not accrue until after the death of the testator. The administrator brought suit against the son and obtained a judgment. The question decided was one involving the priority of liens. However, the court in its opinion said: "So here, in view of the peculiar facts of this case, already set forth, the estate not being closed, we think it is clearly within the power of a court of equity to take from a specific devise, made to a distributee, a proper part of the funds of the estate in his hands at the time of testator's demise, and to decree the same to be a lien upon this specific devise." The court then added: "These cases are in equity, and they are both peculiar in their facts; so peculiar as to introduce exceptions to general rules, and this opinion is not to be taken as a precedent for more than is actually decided." We submit that this case is not in point either as to the facts or the propositions of law decided. In *Schultz v. Locke,* 204 Ia. 1127, 216 N. W. 617, the court held directly that retainer would not be denied by reason of the fact that no mention was made of the indebtedness of the devisee in the will when the devisee was insolvent. The court in its opinion relies upon *Russell v. Smith, supra, Senneff v. Brackey, supra,* and *Woods v. Knotts,* 196 Ia. 544, 194 N. W. 953, 30 A. L. R. 768, the latter of which involved an intestate estate. We are of the opinion from what we have heretofore said that these cases are not in point and that they do not support the holding in *Schultz v. Locke, supra.* We are unable to follow the reasoning of the Iowa court in the *Schultz* case, and we are convinced that it is not supported by the authorities. The next Iowa case is that of *Rodgers v. Reinking,* 205 Ia. 1311, 217 N. W. 441. It is based entirely upon the decision in the *Schultz* case and consequently is no better authority than the former. Likewise, the later case of *Johnson v.*

*Smith,* 210 Ia. 591, 231 N. W. 470, in so far as the doctrine of retainer is allowed against the interest of the devisee in the real estate is concerned, is based upon the *Schultz* case. We necessarily conclude that the decisions of the supreme court of Iowa on this subject constitute a view not supported by the authorities generally and, in our opinion, are not supported by the better reason and logic.

The notes given in the case at bar were evidence of a simple indebtedness owing to the testator. The indebtedness represented by them was not an advancement for the reason that it does not comply with our statutes on advancements nor does it have any of the characteristics of an advancement. It is not a charge upon the interest of the devisee in the real estate because it was not made so by the testator in his will. It is nothing more than an indebtedness due the estate which passes to the executor upon testator's death. The effect of our former opinion was to make the indebtedness a charge when a charge in fact was not created.

It must be remembered that at common law all of the property of a deceased person passed direct to his heirs upon his death, free from any debts due the deceased from the heirs. Most states, including this state, have enacted statutes providing that personal property passes to the executor or administrator upon the death of the owner. Such statutes are clearly in derogation of the common law and it is only because of them that an executor or administrator comes into possession of the personalty and may retain from the interest of a legatee or distributee the amount owing to the deceased. In this state the legislature has not changed the common law in so far as the descent of real estate is concerned. The result is that real estate descends to the devisees of a deceased free from the debts of such devisee subject only to conditions imposed by statute. Our statutes, hereinbefore cited, do not provide for advancements in testate estates, the will of testator presumably being the testator's last expression of his intention. There being nothing in the will purporting to charge the devisee

with the indebtedness owing the testator, it evinces an intention to treat the notes as a simple indebtedness and to leave their enforcement to the ordinary legal methods provided by law. No charge against the land was created by the testator in the case at bar. Under such circumstances, the only remedy of the administrator or executor is to invoke the ordinary legal remedies to enforce payment. The adoption of any other rule would be equivalent to a rewriting of testator's will by us or tantamount to the passage of a statute by the court in a field where the legislature has refused to act. If the legislature had intended to make a devisee's ordinary debt to his intestate an advancement or a charge upon the devisee's interest in the real estate, it would have been a simple matter for it to have done so. By the inclusion of one, the exclusion of the other is logically inferable. The testator in this case had the legal right to dispose of his property in any way that he saw fit. He was under no legal obligation to give his children equal amounts in his estate. The intention of the testator must be determined from the four corners of the will. If the testator had intended to give his son anything less than a one-eighth share in his real estate, he could have said so in the will, and, as he did not do so, it is not the province of this court to do it for him and thereby give an effect to the will that the testator never intended.

The effect of appellee's contention is that we should substitute the court's idea as to what is fair and equitable for that of the testator. This we cannot do. It might appear to the casual observer that the will as executed produced an inequitable result, but, on the other hand, we have no knowledge of the facts that motivated the testator in drawing the will as he did. He had the legal right to dispose of his property as he saw fit and the reasons he had for making the disposition that he did make are not of concern to this court. The fact remains that the inequity of the present situation, if there be such, cannot be adjusted by depriving the appellant of its legal interest in the devise and giving it to others.

In considering the case before us, we must give effect to the intent of the testator as shown by the will itself and the enactments of the legislature upon the subject. After doing so, the only sound conclusion that can be reached is that the debt of the devisee to the testator cannot be charged on the lands devised to him, in the absence of language in the will making such debt a charge, and this rule applies whether the devisee be solvent or insolvent.

The judgment of the trial court is reversed, with directions to enter a judgment for the appellant in accordance with the views expressed in this opinion.

REVERSED.

ROSE, J., dissenting.

It seems to me there is a better view of the law than that expressed in the carefully prepared opinion of Judge Carter. Justice, the goal of both law and court in litigation, makes payment of the valid unpaid debt of the son to the father a charge against the devise of the father to the son under the will, the law and the circumstances of this case. The residuary clause of the will reads thus:

"The residue of my estate to be divided as follows: One-eighth each to my children, Wm. P. Stanton, Edward C. Stanton, Kate Porterfield, Eliza Stanton, Dora Ragan, Anna Hawe, to my granddaughter, Stasia Hawe; and one-sixteenth each to Estella Stanton and Eugene Stanton, the children of my deceased son, Tim Stanton."

This testamentary gift is a legacy as well as a devise. It includes personalty as well as realty. It does not use the word "devise." The notes from son to father were parts of the residuary estate willed to all the children. On sound reasons the supreme court of Nebraska, in harmony with decisions generally throughout the country, adopted the following rule formulated by Chief Justice Morrissey:

"While a legatee retains in his own hands a part of the fund out of which his legacy and other legacies should be paid, he is not entitled to receive from the executor the amount of his legacy without deducting therefrom the amount of the fund which is already in his hands as a

debtor of the estate." *First Trust Co. v. Cornell,* 114 Neb. 126, 206 N. W. 749.

In reaching this conclusion, the court adopted from *Smith v. Kearney,* 2 Barb. Ch. (N. Y.) 533, the following unanswerable reasons:

"This right of retainer depends upon the principle that the legatee or distributee is not entitled to his legacy, or distributive share, while he retains in his own hands a part of the funds out of which that and other legacies or distributive shares ought to be paid, or which is necessary to extinguish other claims on those funds. And it is against conscience that he should receive anything out of such funds without deducting therefrom the amount of the funds which is already in his hands, as a debtor to the estate."

On principle, as I view the law, there is no rational distinction for applying these reasons to legacies of personal property and not to devises of real estate, unless the legislature has inserted heresies in the statutes. A wrong interpretation does not become right by repetition. Some of the ablest courts have refused to recognize such a distinction and have boldly held on reason and equity that a valid, unpaid debt owing by a devisee to testator may be made a charge against the devise. The supreme court of New York held:

"The rule of offset of an indebtedness by a legatee, if any, to the estate applies to a devisee as well, and such legatee or devisee must pay the indebtedness before he is entitled to the legacy or devise. *Smith v. Kearney,* 2 Barb. Ch. (N. Y.) 533; *Rogers v. Murdock,* 45 Hun, 30; *Clarke v. Bogardus,* 12 Wend. (N. Y.) 67; *Matter of Bogart,* 28 Hun, 466; *In re Matter of Colwell's Estate,* 15 N. Y. St. Rep. 742." *Warren v. Warren,* 255 N. Y. Supp. 206.

The following was adopted from the first of the New York cases cited:

"The right of the executor or administrator to retain the whole, or a part, of a legacy or distributive share, in discharge or satisfaction of a debt due from the legatee or

distributee to the estate, is not only consistent with the soundest principles of equity, but is perfectly well settled." *Smith v. Kearney*, 2 Barb. Ch. (N. Y.) 533.

With full knowledge of decisions to the effect that debts of a. legatee to testator may be deducted from the legacy do not apply to devises of real estate or to testate estates, the supreme court of Iowa held:

"Claim of deceased against devisee may be offset against the devisee's share of the realty, where the devisee is insolvent and the estate unsettled, notwithstanding no mention was made of the indebtedness of the devisee in the testator's will." *Schultz v. Locke*, 216 N. W. 617 (204 Ia. 1127).

Whether the principle quoted is regarded as an exception to the general rule or as an avoidance of falacious holdings, it is sound in morals, equity and justice. The Nebraska supreme court is not embarrassed by any former decision of its own on the same subject or confounded by technical refinements borrowed from the common law of England. Nothing inconsistent with the spirit of our laws was adopted from the common law by the legislature. I have not discovered anything in our statutes to prevent justice in the present instance. All pertinent legislation and equity powers of courts should be considered together in determining the issue presented. The vesting of title in devisee upon the death of testator is not all the law on that subject. There is another law which says:

"The executor or administrator shall have a right to the possession of all the real as well as the personal estate of the deceased." Comp. St. 1929, sec. 30-406.

Notwithstanding the vesting of title, the executor gets possession of both personal property and real estate for the purposes of administration. He does not hold possession for himself. He represents all the beneficiaries under the will whether legatees or devisees. He does not lose possession until the distributive shares are determined. This possession is a temporary encumbrance and a limitation on vested title. The county court, with equity powers

conferred by law, determines each share and the charges against it, if any. To prevent discriminations not authorized by the will or the law, the county court may resort to equity powers. This procedure is inherent in our system of settling estates of deceased persons. It does not involve the courts in law-making and will-making. Those abominations are more likely to result from a different analysis of the problem.

The statute requires the court in the construction of a will to give effect to the true intent of testator so far as it can be collected from the whole instrument, if such intent is consistent with the rules of law. Comp. St. 1929, sec. 76-109; *Blochowitz v. Blochowitz*, 130 Neb. 789, 266 N. W. 644. Circumstances related to the will may be considered. *In re Estate of Hunter*, 132 Neb. 454, 272 N. W. 318. The right to make a will may be exercised by any competent person. Knowledge of technical terms like "retainer" and "advancement" is not essential to testamentary capacity. The true intent of testator in the present instance is expressed in clear and definite terms. He meant to give his residuary estate to his eight children in equal shares. He said so. The two notes belonged to that estate. They evidenced property of testator's estate in the son's hands— borrowed money. Testator had kept the notes from outlawing. That made them a valid charge against the son who was insolvent. Under the will and the statute the evidences of the debt fell into the hands of the executor. It was his duty to collect the amount due by any lawful method. Collection could only be made for the estate by deducting from the son's distributive share of the real estate devised to him the amount of his debt. In no other way could all beneficiaries under the will realize the bounties bestowed on them by testator. Discrimination in favor of the debtor would defeat the clearly expressed intent of testator. The executor had only this one way of collecting the debt. The vain and idle expedient of limiting him to a court of law in a separate action on the notes to recover a worthless judgment, under the circumstances, seems to

me to imply helplessness of equity and the triumph of injustice in spite of the clearly expressed intention of testator. The modern rule of reason and equity announced by the supreme courts of New York and Iowa is, in my judgment, supported by better reasons than the contrary doctrine of some other courts. I think common-law doctrines adapted to former times and conditions should slumber in the desuetude created for them by modern statutes.

Entertaining these views, I adhere to the former judgment of affirmance as the proper disposition of this appeal.

MESSMORE, J., concurs in this dissent.

PAINE, J., dissenting.

I fully concur in the excellent dissent filed in this case by Justice Rose and concurred in by Justice Messmore. This case has been very carefully considered by this court since it was first argued to the court on October 21, 1937. From the first opinion, found in 133 Neb. 563, 276 N. W. 180, two members of the court dissented, and another member, who did not sit, concurred in the propositions of law stated in the dissent. It was reargued to the full court on March 7, 1938, and to the opinion now adopted by four members of the court three are dissenting.

Patrick W. Stanton had loaned money to his son, William P. Stanton, and the notes which represented this loan he had kept alive by requiring such son to make payments thereon. The final decree states the amount due on these notes from his son to the estate is $1,109.11. This son was bankrupt, and owed a judgment to the Kenesaw State Bank of $1,125, with interest. This court is called upon for the first time to determine the question involved, which is, whether the one-eighth interest in the farm left by the father to this son can be taken by the bank in payment of its judgment, or whether in the settlement of this estate the debt due to the estate because of the money loaned by the father to this son shall be first deducted from this son's share of the real estate.

In state after state, as set out in the original opinion adopted in this case, courts have held that this was proper,

but it is argued in the present opinion that many of such cases arose in intestate estates. When the question first arose in Iowa, that state followed some of the older cases, and stated that such a debt could not be deducted from the share of the real estate.

Then, in 1923, the question coming up again in *Woods v. Knotts*, 194 N. W. 953 (196 Ia. 544) the court, in changing from its former holdings and taking the better view of the question, said: "Where deceased had, as surety, paid certain claims against an heir, and the heir was insolvent, his share of the real property will be offset against the claim of deceased; the personal property being entirely insufficient to offset the indebtedness."

The question again came up in Iowa in the case of *Schultz v. Locke*, 204 Ia. 1127, 216 N. W. 617; the earlier Iowa cases were discussed, and it was said that the right of retainer should not be denied because no mention was made of the indebtedness in the will of the testator, and it could not be fairly anticipated by the testator that the debt would not be fully paid without resorting to the share of the devisee in the real estate, and hence the failure to mention the debt in the will under all the facts was not controlling nor vitally significant, and that the insolvency of the devisee, where there is no personal estate for distribution, makes it a recognized exception to the general rule. The decision significantly remarks that, as the case is pending in a court of equity, with all parties in interest before it, and with issues calling for determination of the rights of all parties, the court allows retainer against the share of the devisee in the real estate of the decedent. The *Schultz* case was decided in 1927, and eight years later the same question came before the Iowa court again in *In re Estate of Flannery*, 221 Ia. 265, 264 N. W. 68, and while I believe the personnel of the Iowa court had entirely changed, with the exception of one justice, between the dates of the two decisions, yet it again states: "This is the rule definitely settled in this state by the case of *Schultz v. Locke*, 204 Ia. 1127, 216 N. W. 617, and cases therein cited. The de-

cree of the court, therefore, in subjecting the proceeds of the real estate devised to William Meade, together with the legacies, to the payment of his indebtedness owing to the estate and inheritance taxes due the state and costs of the application must be upheld."

Then follows *Rodgers v. Reinking*, 217 N. W. 441 (205 Ia. 1311) in which certain creditors holding liens against a son's interest are defeated in their contention, and it was held: "Mother's estate was entitled to retainer or offset of $30,000 which son D. had refused to pay brother in accordance with contract with mother against share going to D. under provision of mother's will."

Then in 1930 follows the case of *Johnson v. Smith*, 210 Ia. 591, 231 N. W. 470. The whole question is discussed at length in a decision reviewing the earlier authorities, and *Schultz v. Locke, supra*, is again approved.

In the case of *Thompson v. McCune*, 63 S. W. (2d) 41 (333 Mo. 758) the will of Charles W. Armour gave a legacy of $30,000 to Cora S. Thompson, but provided that her indebtedness should be charged against this legacy. The opinion, discussing at length many questions involved, said: "The right of 'retainer' is the right of an executor to retain or hold the legacy which is in his hands by treating the debt due to the estate from the legatee as assets of the estate also in his hands and collected by deducting such debt from the legacy."

In *Hornstra v. Avon State Bank*, 55 S. Dak. 513, 226 N. W. 740, we find this statement: "A judgment is a lien only against the property of the judgment debtor, and, while on the death of an ancestor intestate his real estate at once descends to his heirs, it does so under the provisions of our Rev. Code 1919, sec. 700, 'subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration.' In the process of administration it is entirely just and equitable that any indebtedness due from an heir to the estate should first be deducted from any distributive share to which he might otherwise be entitled, and that, in

reality, he is only entitled on any principle of justice or equity to whatever balance there may be in his distributive share after deducting therefrom whatever he owes to the estate."

In *Smith v. Kearney*, 2 Barb. Ch. (N. Y.) 533, in addition to the citation made by Justice Rose, another paragraph is quite in point: "This right of retainer depends upon the principle that the legatee or distributee is not entitled to his legacy, or distributive share, while he retains in his own hands a part of the funds out of which that and other legacies or distributive shares ought to be paid, or which is necessary to extinguish other claims on those funds. And it is against conscience that he should receive any thing out of such funds without deducting therefrom the amount of the funds which is already in his hands, as a debtor to the estate. And the assignee of the legatee, or distributee, in such a case, takes the legacy or distributive share subject to the equity which existed against it in the hands of the assignor."

The Nebraska legislature, in section 30-406, Comp. St. 1929, clearly intended to make a devisee's ordinary debt a charge upon such devisee's interest in the real estate bequeathed him under the will. May we note the simple and precise language used by our legislature in this section: "The executor or administrator shall have a right to the possession of all the *real* as well as the personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees."

Under this section 30-406, Comp. St. 1929, this court held, in *Blochowitz v. Blochowitz*, 130 Neb. 789, 266 N. W. 644: "We have sustained the right of the executor and administrator, under this statutory provision, as a general rule, to maintain ejectment for real estate, pending payment of debts and settlement of the estate."

In *Tillson v. Holloway*, 90 Neb. 481, 134 N. W. 232, this court said: "It is true, as contended by defendant, that the

legal title belonging to an intestate estate descends to the heir subject to the payment of debts; but, under the statute, it is equally clear that the right of possession is in the administrator until his administration is closed."

In any event, would not the executor, under this statute, clearly have the right to retain the real estate of this son until the rents therefrom had paid the debt due the estate of his father?

A recent statement of the general rule is found in 2 Pomeroy, Equity Jurisprudence (4th ed.) 1009, sec. 541, as follows: "A legacy from a creditor to his debtor, unaccompanied by language in the will or exterior to it expressly showing the special intent, whether equal to, greater or less than, the debt, raises no presumption whatever, either of law or of fact, that the testator intended thereby to excuse, release, or discharge the debt, so that the legatee would be entitled to claim and receive the whole amount bequeathed, but would be freed from all liability to pay the debt."

It may be of interest to review the pleadings as shown by the record in this case. Section 27-503, Comp. St. 1929, sets out that the county court shall have exclusive jurisdiction of the probate of wills and the administration of estates, and by proper proceedings a final decree was entered in the county court on April 3, 1930, showing that the last will and testament was duly admitted to probate by that court on September 19, 1929, and that John R. Hoban was appointed executor thereof; that the final account of the executor is approved and allowed, and that the title to the real estate is assigned to each of the heirs (naming them and their shares), and "To William P. Stanton an undivided one-eighth interest subject to his indebtedness to said estate as herein found and the said share of William P. Stanton to the extent of his said indebtedness to the legatees above named in their several respective interests in the residue of said estate as provided by the terms of said will and codicil." No appeal has ever been taken from this final decree fixing the heirs and

shares and showing that the share of William is subject to his indebtedness to the estate. The action appealed to this court is a partition action, brought in the district court after such final decree was entered to have the property partitioned between the heirs, and, in case that is impossible, to have the same sold, and the question arises, how is it possible to change the provisions of the final decree when no appeal was taken therefrom?

This opinion now entered, setting aside the decree of the district court in the partition case, is said to be founded upon common-law doctrines. Does it not clearly violate the simple terms of our Nebraska statute and hold for naught the wishes of the testator? He had kept these notes of his son alive by requiring the three payments thereon, so he could collect them if possible before his death, and, if not then, he was certain that, being current obligations, they could be collected as part of the residuary estate left to his heirs, thus dealing fairly with the heirs who had not borrowed from him. When the intention of the testator is so clearly ascertained, is not this court bound to give it effect? To the contrary, the opinion now adopted declares that these notes so carefully husbanded by the father are null and void. For, as stated in the syllabus, it is held that the father's omission to mention them in his will evinces an intent not to charge the devise to his son with their payment; and, further, "The debt of a devisee to the testator cannot be retained from or charged on the lands devised to him in the absence of language in the will making such debt a charge."

The majority opinion thus makes it necessary that the will of this testator refer to and set out these loans or they are extinguished. This has never been the practice, as in this state we have permitted wills to be drawn by the testator himself who desired to dispose of his property in his own way, and by a layman as a friend of the testator, and never required that they be drafted by lawyers. Under the requirement all that has been necessary is that the testator be mentally competent and know the objects of

his bounty, and if so our courts have uniformly construed wills to be valid. In doing that we have taken from them every technical refinement, and not required the services of an expert in drafting wills, and the facts in this case show that the testator did not seek to forgive the debt of his son, but that he kept the notes alive by requiring interest to be paid upon them so they would not outlaw.

In the unanswerable logic of Justice Rose's dissent, he calls attention to the fact that the father in the case at bar gave his residuary estate to his heirs in equal shares and that these two notes due him from his son were a part of that residuary estate.

The bank has a judgment against the bankrupt son, and is entitled to collect it from all the property this son receives from his father's estate. The bank had no claim against the other seven-eighths of the property of the estate, but by the opinion now adopted the heirs of seven-eighths of the estate lose the $1,109.11 due from the eighth heir, and the bank collects its claim in full.

Is it not a most extraordinary situation to have this court hold that, if a deceased happens to make no will, or if by accident no will is found, the debt of an insolvent heir can legally be deducted from his share of the real and personal property left to him thereunder? but if, on the other hand, a will be discovered and probated, injustice will result to all of the heirs who do not owe the estate, by giving to the creditors of that one which owes the estate his share of the estate free and clear of all of his debts to the estate, if perchance such debts have not been specifically set out at length in the will.

As has well been stated, "If this opinion stands we will eventually have to change all of our rules of construction of wills relative to charges and liens against the land."