HARTFORD ACCIDENT & INDEMNITY COMPANY, APPELLANT, V.
ETHEL STOUT, EXECUTRIX, ET AL., APPELLEES.
2 N. W. (2d) 315

FILED FEBRUARY 6, 1942.   No. 31281.

*Hall, Cline & Williams,* for appellant.

*John S. Bishop* and *Harry R. Ankeny, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff filed its petition in the district court seeking to
have a lien declared upon certain real property.   Defendants
demurred separately.   The trial court sustained the demur-
rers.   Plaintiff elected to stand on its petition.   Its action
was dismissed.   Plaintiff appeals.

For the purpose of this decision, the following facts,
alleged in the petition, are taken to be true.

Nellie K. Rector, by will admitted to probate June 13,
1935, made nine specific cash bequests totaling $9,400; five
specific bequests of personal property; and devised certain
real estate in Lancaster county to Richard F. Stout; devised
the remainder of her estate, real, personal, and mixed, to a
residuary devisee; nominated Stout as executor of her
will "and empower him to sell any real property of which

I may die seised without obtaining the license of any court for such sale."

June 13, 1935, Stout qualified as executor by filing his oath, together with his bond in the sum of $5,000 upon which the plaintiff was surety.

April 17, 1937, the First Trust Company of Lincoln obtained a judgment against Stout for $360.92 which became a lien against the property devised to Stout by Mrs. Rector.

Under the authority in the Rector will, Stout sold the real estate for more than $2,000.

Stout died October 15, 1939, having been the executor of said estate from his appointment until his death. Under Stout's will, admitted to probate, Ethel Stout is the sole devisee and also the administratrix with the will annexed of the Stout estate.

After Stout's death, Ethel Stout filed a report for him as executor of the Rector estate, to which objections were filed by the residuary devisee and legatee. Upon hearing, the county court on July 3, 1940, entered an order surcharging the account of Stout as executor in the sum of $1,349.21 for moneys received and not accounted for. This sum was paid by the plaintiff to the administrator *de bonis non* of the Rector estate, and it thereby became subrogated to all rights of such administrator against the Stout estate.

The only asset in the Stout estate is the real estate devised to him by Mrs. Rector, which has a value of less than $2,000 after deducting unpaid taxes. Claims allowed against Stout's estate, exclusive of this claim, are in excess of $5,000. The Stout estate is insolvent.

On April 30, 1940, and within time, plaintiff filed a contingent claim against the Stout estate and on July 5, 1940, filed its "absolute claim or set-off" against the devise to Stout under the Rector will.

Plaintiff alleges that, by reason of the fact that Stout, as executor, applied to his own use funds belonging to the Rector estate, he thereby elected to receive to that extent payment of his devise in moneys instead of property, and

that said sum of $1,349.21 is a first lien or claim upon the real estate superior to the claim of Ethel Stout as devisee and as administratrix with the will annexed, and to the judgment of the First Trust Company. Plaintiff prayed for a decree that the sum of $1,349.21 is a first lien upon the real estate and for equitable relief.

Ethel Stout personally and as administratrix demurred for the reasons that the petition does not state facts sufficient to constitute a cause of action and that the court has no jurisdiction of the subject-matter. Defendant First Trust Company demurred on the grounds that the petition did not state a cause of action and that plaintiff had an adequate remedy at law.

The petition recognizes that title to the real estate passed to Stout under the Rector will and to Ethel Stout under the Stout will. Plaintiff alleges that Stout, by applying to his own use funds belonging to the Rector estate, "elected to receive to that extent payment of his devise in moneys instead of property," and by reason thereof the sum so used becomes a lien superior to the claim of Ethel Stout as devisee and as administratrix. It necessarily follows that plaintiff claims that the election to take money and not property and the creation of the lien by the taking occurred during Stout's lifetime. It further follows that Stout's death did not change this situation, for had Stout lived, had he reported his doings as executor and had his account been surcharged for the amount here involved and had his surety paid the amount, the problem would have been the same.

It may be pointed out here that the petition is silent on three matters of fact: First, when did Stout sell the Rector real estate? second, when did he apply estate funds to his own use? and, third, when did he become insolvent?

We have then this situation as presented by the plaintiff. Title to this real estate vested in Stout personally at the date of Mrs. Rector's death, a date not disclosed by this record, but obviously prior to the probate of her will on June 13, 1935. He held that title, free from any lien or

claim until April 17, 1937, when the lien of the First Trust Company judgment attached. No lien or claim thereafter attached to that title during his lifetime, unless it is determined that a lien attached thereto when he applied estate funds to his own use. This date is not set out in the petition. We cannot determine when that application of funds occurred prior to the date of his death October 15, 1939. Neither can we say that the misuse of estate funds in 1939 establishes as a fact that he then elected to take money instead of the real estate, title to which vested in him in 1935.

The plaintiff stands in the position of a creditor of the Stout estate. As such it has filed a claim against the Stout estate. As such a creditor, should it be given a preferred status, due to the source of Stout's title to the real estate?

We have not been cited to a statute that makes a specific devise to an executor subject to a lien in favor of the estate for the improper administration of estate funds. The will of Mrs. Rector places no such charge upon the devise. The necessary conclusion is that Stout held title to the property subject only to such claims as are established by the ordinary legal remedies to enforce payment, unless it should be determined that an equity court should intercept the devise and attach a lien thereto because of the facts here recited.

Plaintiff's contention is that Stout was empowered to sell the real estate, that he sold other real estate, that this power extended to his specific devise, and that, because of the power to sell, the real estate here involved passed under his dominion as executor and not to him as an individual.

We do not so construe the power of sale. The power was obviously given for the purpose of avoiding the requirement of "obtaining the license of any court" should it become necessary to sell property. This is a power which Stout could exercise consistent with his duties as executor for the purposes for which a court license could be obtained, to wit, to pay debts of the estate and costs of administration. The will did not direct Stout to sell real estate. He

did exercise that power in the sale of real estate, obviously from the residuary estate, and thereby converted real property into personal property. Why he sold real estate is not disclosed. No question is presented as to the legality of the exercise of that power. There is no showing that the money used by Stout, involved in this proceeding, came from the sale of the real estate. Clearly Stout, as devisee, had the power to convey the title to the real estate here involved at any time after title vested in him, and that without the consent of the court. We do not consider that the power given Stout as executor to sell real estate is in any wise a controlling element in this case.

By the devise this real estate was taken out of the residuary estate. It does not appear that it was necessary that it be used to pay debts or costs of administration or that it be used for any estate purpose. Every allegation of the petition points to Stout's holding as personal owner. There is no fact recited from which it can be determined that Stout either retained possession or should have retained possession or control of this real property for estate purposes. On the contrary, the only conclusion to be drawn is that at no time was it necessary that this estate be possessed or sold by Stout as executor for any purpose connected with the estate or the proper administration of the provisions of the will. The devise to Stout is in no wise connected with or contingent upon the performance of his duties as executor. He could have accepted the devise and declined to act as executor. He could have acted as executor and declined the devise. No act of the executor was necessary to vest title in Stout. The estate that vested in Stout under the Rector will was not a part of the Rector estate which it was Stout's duty to administer as executor.

We have reviewed the decisions from other jurisdictions relied upon by the plaintiff in the light of the facts of those cases, the principles announced and our own decisions upon the questions there presented. Those cases are not considered to be controlling of the question here presented.

Three of them will be mentioned herein for the purpose of showing the difference between the cases relied upon and the case at bar.

In *Stanley v. United States Nat. Bank*, 110 Or. 648, 224 Pac. 835, the executor was directed to take, and did take, exclusive and complete control of all the assets of the estate with power to hold, to invest, to sell, and to convey any of the estate property as to him seemed best. The will clearly contemplated that the executor should manage the estate and keep it largely intact for a period of years. Specific devises of real property were not made. Residuary devises and legacies were included. After seven years of such service as executor, approximately one-half of the estate was dissipated, and the executor was insolvent. The case involved a contest between a judgment creditor of the executor-devisee and the other devisees. The court held that the executor occupied the position and possessed the powers of an ordinary trustee charged with the duty of paying over the trust property to the beneficiaries of the trust. The court further held that the executor was required to set aside the proceeds of any sale for the benefit of the legatees and devisees of whom he was one. He exercised his powers, disposed of assets, and took more than his share of the estate. His rights being satisfied, it was held that his title to the estate property was extinguished. In the body of the opinion the court makes this significant distinction: "The Maryland cases above cited, and the English cases referred to therein, hold that a legal estate owned or acquired by a trustee, and not a part of the trust estate to which he owes the duties of a trustee, is not liable to be intercepted by a court of equity to make good trust funds misappropriated by the trustee. That principle does not operate to prevent a court of equity from reaching the beneficial interest of Stanley in the real property of the estate for the purpose of satisfying, so far as it will, his *devastavit*, for the reason that in the instant case the legal title to the realty which vested in Stanley, at the death of the testator, constituted a part

of the estate which it was his duty to administer, as executor."

*Devries v. Hiss,* 72 Md. 560, 20 Atl. 131, is distinguishable on the facts. There the legal title vested in five trustees. One of the trustees was also a beneficiary of the trust. The trustees were empowered to sell a part or the whole of the estate in order to make a division required by the will. While the legal title was in the trustees and before his share was ascertained by partition, the one trustee misappropriated trust funds. The amount of the misappropriation was deducted from his equitable share.

The case of *Gosnell v. Flack,* 76 Md. 423, 25 Atl. 411, is not like the case at bar in its facts. It states that "A legal estate owned or acquired by a trustee is not liable to be intercepted by a court of equity to make good trust funds misappropriated by the trustee."

The decision in *Stanton v. Stanton,* 134 Neb. 660, 279 N. W. 336, did not present a situation identical with the one at bar, but certain conclusions there reached point the way to a solution of this problem.

In the *Stanton* case the devisee was, prior to the execution of the will, indebted to the testator on certain promissory notes. The will was silent as to this indebtedness. The question there was, should the indebtedness to the estate be satisfied from the devise ahead of a judgment lien against the devisee that attached to the devise at the time of the testator's death? In the instant case, there was no indebtedness due from Stout to Mrs. Rector at the time of her death, and none to her estate so far as this record discloses for over four years thereafter.

Following previous decisions of this court, the *Stanton* case redeclared: "The title to real estate under a devise in a will is vested in the devisee at the instant of testator's death." Plaintiff's petition is clearly drawn in recognition of the above rule. As stated in the *Stanton* case, the title so vested in the devisee is "subject to the right of the executor to sell the land to pay debts duly allowed against the estate and the expenses of administration." Neither of those conditions is here involved.

Under these circumstances, as was held in the *Stanton* case, the only remedy of the plaintiff is to invoke the ordinary legal remedies to enforce payment.

The judgment of the trial court is

AFFIRMED.